NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2022*
Decided July 20, 2022

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2871

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-C-1740 |
| | |
| JOAN R. PANSIER, | William C. Griesbach, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

After Joan Pansier and her late husband spent decades denying tax liability, the government sued them to collect several years of delinquent federal taxes and penalties. Because Pansier did not timely answer the operative complaint, the district court entered a default and then, after receiving evidence, a default judgment against her.

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Pansier challenges those orders on appeal. Because the district court had adequate grounds for both decisions, we affirm.

In 2017, the government began efforts to collect unpaid income tax assessments from the Pansiers. The assessments applied to Pansier's husband for 1995 and 1999 and to the couple jointly and severally for 2000 to 2006 and 2014. After a bankruptcy proceeding delayed the suit for several years, the government amended its complaint, and the district court gave the Pansiers until December 28, 2020, to respond.

Before the deadline-to-answer date, Pansier's husband died. The government proposed that Pansier serve as his estate's personal representative for this case. The court ruled that, if she accepted the appointment, Pansier "must file a response to the Second Amended Complaint as the personal representative of the Estate of Gary Pansier on or before December 28, 2020." Pansier refused the appointment, the government did not propose another personal representative, and the court dismissed the claims against the late husband. *See* FED. R. CIV. P. 25(a)(1). Later, the government asked the court to clarify that the dismissal was "without prejudice" in order to "avoid controversy over whether the United States still had a right to pursue claims against the bankruptcy estate for Gary Pansier's taxes." The court did so.

The deadline to answer passed without Pansier responding to the operative complaint. Shortly before that deadline, in denying unrelated motions that Pansier had filed, the court reminded Pansier that she needed to answer the complaint by the deadline. More than two weeks after the deadline had passed without an answer from Pansier, the government requested—and the clerk of the court entered—default against her. *See* FED. R. CIV. P. 55(a).

The day that the clerk entered the default, Pansier unsuccessfully moved to set it aside, FED. R. CIV. P. 55(c), and file an answer, FED. R. CIV. P. 6(b)(1)(B). She explained that she thought she was not expected to answer for herself until there was an approved representative for her late husband. Pansier also attached her proposed answer. In it, she first "[a]dmits" that her tax returns for 2000 to 2006 and 2014 "showed federal income taxes due and owing." She generally disputed the amount that she owed: She alleged that the electronic records for those tax years were inaccurate, the assessments did not reflect all payments made, and the government misapplied her payments towards her husband's tax liability. She otherwise disclaimed knowing the assessment dates, amounts, and whether she received notice. The district court denied her motions, ruling that Pansier failed to present a meritorious defense to liability. Pansier, the court explained, admitted liability and challenged only the accuracy of the assessed amounts,

which, it observed, she could contest at the next stage of litigation, when the amount of default judgment would be set.

The government later moved for default judgment. FED. R. CIV. P. 55(b). It furnished evidence of the amount that Pansier owed: certified records (Forms 4340) reflecting her tax debt, a summary of interest and penalty computations (excluding penalties discharged in bankruptcy), and an affidavit substantiating the calculations. Combining the delinquent tax debt, penalties, and interest, the government argued that Pansier was liable for $127,782.18. Pansier responded to the motion. She contended that the government's evidence was unreliable, that the interest was excessive, that the IRS had misapplied some proceeds from her late husband's pension, and that the fees and costs had no basis. Unlike in her proposed answer, she also now denied tax liability.

The district court entered default judgment in the amount of $127,782.18. It ruled that Pansier did not rebut the government's evidence calculating the tax debt, interest, and penalties, and her denial of tax liability came too late. The court subsequently denied her later request to alter the judgement. *See* FED. R. CIV. P. 59(e). Pansier has now timely appealed. *See* FED. R. APP. P. 4(A)(iv).

We start our analysis by examining our jurisdiction. Even though she is the appellant, Pansier contends that because the court dismissed the claims against her late husband "without prejudice," the judgment against her is not final and appealable. *See* 28 U.S.C. § 1291. But if no curative amendment could revive the personal claim in this suit against the late husband, the rule that a dismissal without prejudice is not final is not applicable. *See Hernandez v. Dart*, 814 F.3d 836, 840–41 (7th Cir. 2016). And with the death of the late husband, no amendment could allow a personal claim against him in this case. We recognize that the government contemplates possible litigation against the late husband's bankruptcy estate. But when, as here, the case against a party is over, an appeal is ripe even if that party was dismissed without prejudice and "a similar case may be filed in the future." *Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 506 (7th Cir. 2009).

On the merits, Pansier first challenges the entry of default. She argues that she acted quickly and offered good cause for her default: She mistakenly believed that if she declined to act as her late husband's personal representative, then she did not need to answer the complaint. But for a district court to exercise its discretion to excuse default, Pansier needed to show more than good cause and quick action (which, like the district court, we will assume that she showed). *See Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020). She must also supply a

meritorious defense to liability. *See id.* Pansier did not. To the contrary, in her proposed answer she "[a]dmits" to "owing" federal income taxes for the relevant tax years. By admitting liability, she necessarily lacks a meritorious defense to it. *See Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). True, her proposed answer challenges the amount that she owed. But that is a challenge to the amount of damages. As the district court rightly noted, such a contention does not rebut liability and may be raised at the default-judgment stage. *See id.* at 890–91 (affirming district court's refusal to vacate entry of default when the movant merely contested the amount of damages, not liability).

Regarding the default judgment itself, Pansier argues that the district court wrongly calculated the extent of her debt. Submitting new evidence on appeal, she presses that the government's evidence was unreliable and that some penalties had been discharged in her bankruptcy case.

These arguments are unavailing. The government's evidence—certified assessments from Form 4340 for each year, a summary of interest computations, and an affidavit substantiating the damages calculation—amply support the judgment. We presume that the government's evidence of tax liability, such as in the Form 4340, is correct. *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *Hefti v. IRS*, 8 F.3d 1169, 1172 (7th Cir. 1993) (Forms 4340 presumed correct). Pansier submitted no evidence in the district court to rebut this presumption, and she may not do so on appeal. *See United States v. Howell*, 958 F.3d 589, 595 (7th Cir. 2020). As for her contention that some penalties subsumed in the judgment had been discharged in bankruptcy, the district court had adequate grounds to reject it. The government's evidence showed that its calculations accounted for the effects of the bankruptcy discharge. Because the damage award accompanying the default judgment is not "plainly excessive," we will not upset it. *See Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). And to the extent that, in response to the government's motion for default judgment, Pansier denied any tax liability, the district court reasonably rejected that denial as coming too late. *See VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016).

Finally, Pansier frivolously argues that the district court did not follow the required two-step process of docketing an entry of default before entering default judgment. But the docket entry for January 19, 2021, states: "Clerk's ENTRY OF DEFAULT as to Joan R Pansier." (The next two entries show that, on that same day, she was electronically served, and she moved for relief from the default.) The default judgment did not come for another seven months, after the government's motion and

Pansier's response. This is procedurally sound. *See* FED. R. CIV. P. 55; *VLM Food Trading Int'l, Inc.,* 811 F.3d at 255 (explaining the two-step process).

We have reviewed Pansier's other arguments, and none has merit.

AFFIRMED